IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



CLERK, U.S. DISTRICT COURT
RICHMOND, VA

LINDA TYREE,

                                        Plaintiff,

        v.                                              Action No. 3:09–CV–663

UNITED STATES OF AMERICA,

                                        Defendant.

## MEMORANDUM OPINION

This matter is before the Court on two motions arising out of Plaintiff Linda Tyree's complaint asserting a claim for malicious prosecution under the Federal Tort Claims Act ("FTCA") against the United States of America. The Government has filed a Motion for Summary Judgment (Dock. No. 25), seeking dismissal of Tyree's complaint on the grounds that Tyree cannot satisfy the lack of probable cause requirement. In response, Tyree has filed a Motion for Discovery Pursuant to Rule 56(f) (Dock. No. 30), asserting that discovery is needed and summary judgment is premature. For the reasons outlined below, the Court GRANTS the Government's motion and DENIES Tyree's motion.

## I. BACKGROUND

Plaintiff Linda Tyree is an employee of the Hunter Holmes McGuire Veterans Affairs Medical Center ("Center"), a facility located in Richmond, Virginia and operated by the United States Department of Veterans Affairs. Former Plaintiff Jennifer Marshall was previously a Center employee and is currently the President of Local 2145 of the American

Federation of Government Employees, which represents Center employees.[1]  Tyree is also a

member of Local 2145.

The events giving rise to this controversy occurred on July 31, 2008, when Tyree,

who was on medical leave at the time, and Marshall together entered Center property in

order to fill out forms for Tyree to apply for disability benefits.  Tyree and Marshall entered

on to the Center's property in one vehicle, with Tyree driving Marshall's vehicle.  Marshall

entered the Center's premises despite being aware that she had been banned from all

Center property on July 2, 2008.[2]  Center police officers informed Marshall that she had to

leave the property immediately.[3]   The officers told Tyree that she was not banned from the

premises and thus had two options: she could drive the vehicle off of Center property

because she had driven Marshall onto the property or she could exit the vehicle and let

Marshall leave the property alone.  As the officer continued to plead with Tyree and

Marshall to comply with his orders, Tyree and Marshall exited the vehicle in order to

---

[1] After filing the Complaint, Marshall entered into an agreement with Defendant that resolved her claims and she thereafter voluntarily dismissed herself from this action.

[2] Tyree's Complaint indicates Marshall believed the ban was unconstitutional, illegal under federal law, and a violation of the collective bargaining agreement between the Center and Local 2145.  (Am. Compl. ¶ 15.)

[3] Once on the property, nearly all of the interactions Tyree and Marshall had with VA police officers were recorded on video by a VA officer.  The video jumps in several spots, which Tyree objects to as selective editing.  Whether the video does or does not show the entire event is not dispositive here, however, because, as discussed below, the sole question is whether probable cause existed, which the Government contends can be established by watching what is on the video.  Tyree admits that the moments captured on video are accurate depictions of those moments. (Tyree Mem. in Opp. Mot. for Summ. J., Ex. 1, ¶ 19). A copy of the video has been provided to the Court as an exhibit to the Government's motion.

switch places in the truck, resulting in Marshall sitting in the driver's seat and Tyree in the

passenger's seat.  After the switch, Marshall began to ask Tyree questions in connection

with the disability benefits claim and Marshall recorded her answers on a form.  Marshall

refused multiple requests to leave until she was informed that she could be arrested.  As

Marshall backed out of the parking space, she side swiped a parked Jeep.  Tyree stayed with

Marshall for the entire forty minutes that the two remained on the Center's property.

In her Amended Complaint, Tyree alleges that after she and Marshall left, Deanne

Seekins, the Center's Acting Director, asked Toney Hill, Chief of Police Service at the Center,

to initiate criminal prosecutions of Tyree and Marshall.  Although Tyree claims that Fred

Williams, the police officer ordered to seek the warrants from a Virginia state magistrate

judge, was hesitant to seek the warrants, Williams nonetheless reported the necessary facts

to a judge, who issued warrants for Marshall and Tyree.  Marshall was charged with

trespassing and obstruction of justice.  Tyree was charged with obstruction of justice.  All

three charges were eventually dismissed.

After exhausting the administrative remedies mandated by the FTCA, Tyree filed her

Complaint with this Court, asserting a claim for malicious prosecution against the United

States.[4]  After filing an answer, the United States has now filed a Motion for Summary

---

[4] In addition to the United States, the Complaint names several other defendants, including
Seekins, Hill, and Williams.  The United States determined that the allegations against the
individuals in the Complaint all concern actions the individuals took within the course and
scope of their federal employment.  Accordingly, under the FTCA, which provides that the
sole remedy for claims of damage from a federal employee's actions who was acting within
the course and scope of his employment lies in an action against the United States, 28 U.S.C.
§§ 2671, 2679, the United States filed a notice of substitution making it the sole defendant
in this case.  See also 28 C.F.R. § 15.4(a).  Tyree has not objected to the substitution.

Judgment. Tyree has filed a Motion for Discovery Pursuant to Rule 56. Each one is discussed below.

## II. LEGAL STANDARD

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). But, when, as here, the record contains a videotape that captures all material events in question, the court need only credit the plaintiff's version of events to the extent it is not contradicted by the video. Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)). In evaluating a summary judgment motion, courts may also look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where no genuine issue of material fact exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Under Rule 56(f) of the Federal Rules of Civil Procedure, a court can deny a motion for summary judgment or defer ruling on the motion if the party opposing the motion shows by affidavit that further discovery would uncover additional evidence that could create a genuine issue of material fact sufficient to defeat summary judgment. To succeed on a Rule 56(f) motion, the party must clearly state what information is sought and explain how it would preclude summary judgment. <u>Goodell v. Rehrig Int'l, Inc.</u>, 683 F. Supp. 1051, 1054 (E.D. Va. 1988).

### III. DISCUSSION

When analyzing an FTCA claim, the court must apply the state law where the alleged tort occurred, which in this case is Virginia. <u>See</u> 28 U.S.C. § 1346(b)(1). Tyree asserts a claim for malicious prosecution, which under Virginia law, requires the plaintiff to prove that the prosecution was (1) instituted or procured by or with the cooperation of the defendant, (2) terminated in a manner not unfavorable to the plaintiff, (3) without probable cause, and (4) malicious.[5] <u>Reilly v. Shepherd</u>, 273 Va. 728 (2007). Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia. <u>Id.</u> (citing <u>Ayyildiz v. Kidd</u>, 220 Va. 1080, 1082 (1980)). For purposes of this motion, the United States's sole contention is that Tyree cannot prove that the prosecution of Tyree for obstruction of justice under Virginia Code § 18.2-460 was without probable cause.

In this context, Virginia law defines probable cause as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and

---

[5] The FTCA only permits malicious prosecution claims against the United States if the claim is based on "the acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

circumstances, that the plaintiff is guilty of the crime of which he is suspected."
Commissary Concepts Mgmt. Corp. v. Mziguir, 267 Va. 586, 589-90 (2004) (internal
quotations omitted). Whether probable cause existed is determined based on the facts that
existed at the time the complained of action was taken, id. at 590, and is measured against
an objective standard, Taylor v. Commonwealth, 391 S.E.2d 592, 596 (Va. Ct. App. 1990)
(citations omitted). The question of the presence or absence of probable cause does not
depend on the guilt or innocence of the accused, or on whether a crime was actually
committed. See Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005).

Thus, the relevant inquiry here is whether there are sufficient facts to show that the
Center's police officers had probable cause to believe that Tyree was guilty of obstruction
of justice. Virginia Code § 18.2-460 provides that "any person without just cause knowingly
obstructs . . . any law enforcement officer . . . in the performance of his duties as such or
fails or refuses without just cause to cease such obstruction when requested to do so . . .
shall be guilty of" obstruction of justice. To violate this statute, " 'there must be acts clearly
indicating an intention on the part of the accused to prevent the officer from performing his
duty, as to "obstruct" ordinarily implies opposition or resistance by direct action.'"
Ruckman v. Commonwealth, 505 S.E.2d 388, 389 (Va. Ct. App. 1998) (quoting Jones v.
Commonwealth, 141 Va. 471, 478-79 (1925)). But there need not "'be an actual or
technical assault upon the officer'" to commit obstruction. Id. (quoting Jones, 141 Va. at
478-79).

After reviewing the briefs submitted by the parties, watching the videotape of the
incident, and holding a hearing on the matter, the Court concludes that Tyree's actions,

6

viewed under the totality of the circumstances, provided a reasonable officer with probable

cause to believe that Tyree had obstructed justice.  Although Tyree did not yell, run, or

threaten the officers involved, she repeatedly refused to obey the clear instructions given

by the officers attempting to enforce the ban against Marshall.  Acting in an aggressive or

abrasive manner is not the only hallmark of obstruction of justice.  In some instances, a

failure to act is no different than direct action.  For example, in Burrell v. Virginia, the

plaintiff, after getting in a traffic accident, refused to give the police officer on the scene the

car insurance information that the officer needed in order to file a report required by law.

395 F.3d 508, 510 (4th Cir. 2005).  The officer then issued a summons for obstruction of

justice based on the plaintiff's failure to provide the requested insurance information.  Id.

The plaintiff thereafter filed suit alleging that his Fourth Amendment rights had been

violated because the officer did not have probable cause to believe that refusing to provide

insurance information met the requirements of the obstruction of justice statute.[6]  Id. at

512.  The Fourth Circuit, however, rejected that argument, finding that—even though the

plaintiff was eventually found not guilty of obstruction—the conduct was sufficient to

establish probable cause that the plaintiff had violated the statute.  Id. at 515-16; see also

Coffey v. Morris, 401 F. Supp. 2d 542, 547 (W.D. Va. 2005) (finding that officer had probable

cause to arrest the plaintiff for obstruction of justice after plaintiff, a passenger in a car that

was lawfully stopped, got out of car after being told to stay in car—even though plaintiff

---

[6] In Burrell, the court noted that the plaintiff had filed a claim for malicious prosecution, but that in the context of § 1983, it was better understood as a Fourth Amendment claim for unreasonable seizure.  Id. at 514.  The court further stated that the probable cause inquiry at issue for either claim is the same.  Id.  Thus, Burrell is relevant and instructive here.

later found not guilty of obstruction of justice).

In this case, Tyree's refusal to act after multiple requests provided probable cause to believe that she was obstructing justice. While Tyree was sitting in the driver's seat of the vehicle and Marshall, the banned individual, was sitting in the passenger's seat, the police patiently explained to Tyree that, if she did not know already, Marshall had been banned from the property and that therefore Tyree had two choices: she could either drive Marshall off the property or Marshall could exit the premises while Tyree remained at the Center. Tyree chose neither of these options. Instead, after sitting in the car for over five minutes, Tyree and Marshall switched places in the car, apparently with the intention of ensuring that whatever legal action was taken as a result of the situation would befall Marshall, not Tyree. After the switch, the officers continued to order Tyree to either exit the vehicle to take care of her business or leave the property entirely. Again, she chose neither option. Instead, she continued to discuss the disability paperwork with Marshall, all the while preventing the Center police officers at the scene from enforcing the ban against Marshall as well as carrying on with their other police duties. These actions, viewed under the totality of the circumstances from the perspective of a reasonable officer, provided probable cause to seek a warrant for obstruction of justice. Just as in <u>Burrell</u>, the fact that Tyree was later found not guilty of obstruction of justice does not determine the outcome of the probable cause inquiry at issue here.

To rebut that conclusion, Tyree offers several arguments, none of which alter the outcome. Tyree asserts that the officers could have arrested Marshall if they wanted to and she did nothing to impede that option. The flaw in her argument is that the police have

discretion in how to enforce their orders.  Attempts to bring a citizen into compliance by discussion rather than seeking an immediate arrest is an eminently practical and reasonable decision.

Tyree also contends that summary judgment should be denied here because Tyree has not been deposed in order for her to provide her "understandings and intentions" of the incident and, similarly, because one of the officers has also not been deposed so that he could explain what he "experienced and understood."  Their subjective experiences may be important for the issue of malice, however, they are unnecessary in order to evaluate whether the video shows actions that provided a reasonable officer with probable cause to believe that Tyree obstructed justice.  See Gomez v. United States, No. 97-1025, 1998 WL 183845, at *3 (4th Cir. Apr. 20, 1998) ("Because probable cause is an objective test, we examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause.").

Lastly, Tyree is correct to note that Virginia courts have indeed distinguished between an act that impedes or frustrates an officer, which is not a violation of the obstruction statute, and conduct that intentionally thwarts or prevents an arrest, which is. And it is certainly true that it is important to understand the contours of the offense when evaluating whether there was probable cause that someone committed that offense.  But, as stated above, the issue here is probable cause, not guilt or innocence.  Tyree's actions certainly will never be discussed as an egregious or even quintessential example of

9

obstruction of justice, but nevertheless, the video of the incident shows that Tyree's actions and inactions permissibly fall somewhere along the continuum of behavior (perhaps the low-end) that gives a reasonable police officer probable cause to arrest for obstructing justice. Because the video clearly shows the event in question, no factual disputes exist, and, therefore, the question of probable cause is one for the court. See Lee v. Southland Corp., 219 Va. 23, 27 (1978). Accordingly, the Government's Motion for Summary Judgment is GRANTED.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the United States's motion and DENIES Tyree's motion.

Let the Clerk send a copy of this memorandum opinion to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

> _/s/_
> James R. Spencer
> Chief United States District Judge

ENTERED this _19_ day of May 2010